**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **D&G HOLDINGS, LLC** <br> **t/a DOCTORS LAB** | **CIVIL ACTION NO.: 15-2624** |
| **VERSUS** | **JUDGE ELIZABETH E. FOOTE** |
| **SYLVIA MATHEWS BURWELL, ET AL.** | **JUDGE MARK L. HORNSBY** |

**MEMORANDUM RULING**

Now before the Court is a Motion To Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Sylvia Mathews Burwell, the Secretary of the Department of Health & Human Services ("the Secretary"), and Andy Slavitt, the Acting Administrator of the Centers for Medicare & Medicaid Services ("CMS"). Record Document 13. Defendant Novitas Solutions, Inc., the Medicare Administrative Contractor ("MAC"), has adopted the Motion. Record Document 14.

Plaintiff, D&G Holdings, LLC, t/a Doctors Lab, is an independent medical laboratory that receives Medicare funds for providing services to residents of nursing homes and to other homebound persons in central and northwestern Louisiana. Record Document 1, p. 5. The parties are currently disputing through Medicare's administrative appeals process whether, and to what degree, overpayments were made by Medicare to Plaintiff. Id. at 2–5.

But the action that has precipitated this suit is CMS's withholding of money admittedly owed to Plaintiff for ongoing services in order to compensate CMS for the

alleged overpayments.  The recoupment began prior to the exhaustion of the

administrative process and even prior to a hearing before a neutral Administrative Law

Judge ("ALJ").  Record Documents 13-1, pp. 1–2; 18, p. 2; 16, p. 7.  Plaintiff has filed

suit seeking the following: (1) an injunction barring Defendants from withholding

Medicare payments otherwise payable to Plaintiff on the basis of the alleged

overpayments while the administrative appeals process remains ongoing; (2) an

injunction requiring Defendants to provide Plaintiff with a hearing before and a decision

from an ALJ within 90 days from October 14, 2015; and (3) a writ of mandamus

requiring the Secretary to grant Plaintiff a hearing with an ALJ within 90 days from

October 14, 2015.[1]  Record Document 1, pp. 37–38, 41, 43–44.  Plaintiff has asserted

the following grounds for the Court to issue an injunction preserving the status quo: (1)

procedural due process; (2) substantive due process; (3) an *ultra vires* action; and (4)

a "preservation of rights" under 5 U.S.C. § 705.  Id. at 39–43.

Defendants ask the Court to dismiss Plaintiff's suit for lack of subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, to dismiss

Plaintiff's claim for a writ of mandamus for failure to state a claim upon which relief can

be granted under Rule 12(b)(6).  Record Document 13.   Plaintiff opposes the Motion

To Dismiss, arguing that this Court has subject matter jurisdiction to both (1) provide

the injunctive relief sought and (2) issue a writ of mandamus to compel the Secretary

---

[1] Plaintiff asks this Court to issue a writ of mandamus ordering the Secretary to grant Plaintiff a hearing before an ALJ within 90 days of Plaintiff's request on October 14, 2015.  Record Document 1, pp. 37–38.  In Plaintiff's Memorandum in Opposition to Defendants' Motion To Dismiss, Plaintiff seems to adjust the relief it requests, and instead claims that Defendants have a nondiscretionary duty to provide Plaintiff with an oral, evidentiary hearing before beginning recoupment.  Record Document 16, p. 26.

to grant Plaintiff an oral, evidentiary hearing before recoupment takes place. Record Document 16.

As to the grounds upon which Plaintiff has asserted subject matter jurisdiction, this Court holds as follows:

(1)     28 U.S.C. § 1331 does not grant the Court subject matter jurisdiction in this case because channeling Plaintiff's claims through the administrative appeals process would not mean the claims received "no review at all." Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1 (2000);

(2)     Plaintiff's claims do not satisfy the requirements for issuing injunctive relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a);

(3)     5 U.S.C. § 705 is not applicable in this case and thus does not bestow subject matter jurisdiction on this Court to issue the injunctions sought;

(4)     This Court has subject matter jurisdiction to issue a writ of mandamus compelling an officer or employee of the United States to perform a non-discretionary duty owed to Plaintiff under 28 U.S.C. § 1361, but this Court does not have the power under 28 U.S.C. § 1361 to grant the injunctive relief Plaintiff seeks; and,

(5)     This Court has subject matter jurisdiction to decide Plaintiff's procedural due process claim and theoretically Plaintiff's *ultra vires* action based on a waiver of 42 U.S.C. § 405(g)'s administrative exhaustion requirement because (a) those claims are collateral to the substantive claim for Medicare benefits and (b) a colorable claim of irreparable harm has been

shown if exhaustion is not waived. As to the Plaintiff's other claims, there is no waiver of 42 U.S.C. § 405(g)'s administrative exhaustion requirements.

In summary, Plaintiff has identified sources of this Court's subject matter jurisdiction for only Plaintiff's writ of mandamus request, procedural due process claim, and *ultra vires* action.  However, turning to the Defendants' Rule 12(b)(6) motion, despite this Court having subject matter jurisdiction to issue a writ of mandamus when appropriate, Plaintiff has not identified a non-discretionary duty owed to it by any Defendant and has thus failed state a claim upon which relief can be granted. Accordingly, Defendants' Motion To Dismiss [Record Documents 13 and 14] is:

(1) **GRANTED IN PART** to **DISMISS WITHOUT PREJUDICE** Plaintiff's substantive due process claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction;

(2) **GRANTED IN PART** to **DISMISS WITH PREJUDICE** Plaintiff's "preservation of rights" claim under Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction under 5 U.S.C. § 705 to issue the injunctions Plaintiff seeks;

(3) **GRANTED IN PART** to **DISMISS WITHOUT PREJUDICE** Plaintiff's writ of mandamus claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted; and,

(4) **DENIED IN PART** because the Court has subject matter jurisdiction over Plaintiff's procedural due process claim and *ultra vires* action.

(5)   Plaintiff's *ultra vires* action, as currently set forth in its Complaint, is not one upon which relief can be granted.  Plaintiff is **ORDERED** to submit an amended complaint elucidating an *ultra vires* action by **Tuesday, February**  9,  **2016** if *sua sponte* dismissal of Plaintiff's *ultra vires* action is to be avoided.

## I.    Factual and Procedural Background

Plaintiff and Defendants are involved in a dispute over overpayments Defendants allege Medicare made to Plaintiff.  Record Document 13-1, pp. 1–2.  As stated above, Defendants are Sylvia Mathews Burwell, the Secretary of the Department of Health & Human Services; Andy Slavitt, Acting Administrator of the Centers for Medicare & Medicaid Services; and Novitas Solutions, Inc., the Medicare Administrative Contractor for Louisiana.  As Plaintiff's claims involve payments by Medicare and decisions by contractors for the Secretary, it is important to grasp the administrative process by which Medicare claims are reviewed and in the shadow of which Plaintiff's claims have emerged.

Medicare is a federal program providing health insurance to the elderly and disabled.  See 42 U.S.C. §§ 1395–1395lll.  Plaintiff participates as a health care provider in the federal Medicare program.  While Medicare is funded by the federal government and overseen by the Secretary, CMS administers the Medicare program and contracts with private companies to help administer the Medicare program.  See 42 U.S.C. § 1395h; 42 U.S.C. § 1395u; 42 C.F.R. §§ 421.1–421.404.  CMS contracts with MACs to determine which Medicare claims may be reimbursed and the appropriate amount of

reimbursement.  See 42 C.F.R. §§ 421.200, 421.400–421.404.  CMS contracts also with Zone Program Integrity Contractors ("ZPICs") who are tasked with performing "medical and utilization review and fraud review functions for benefit integrity purposes."  42 C.F.R. §§ 421.300–421.421.316.

Between 2011 and 2014, NCI AdvanceMed, a ZPIC, conducted a review of Plaintiff's facility.  Record Document 1, p. 23.  On December 19, 2014, NCI AdvanceMed alleged that Medicare had overpaid Plaintiff $8,329,967.03 because Plaintiff had failed to prorate mileage properly.  Record Document 1-9.  Defendant Novitas Solutions, Inc., is a MAC for Louisiana and is the Medicare contractor pursuing the alleged overpayment.  See Record Document 1-11.  Plaintiff is currently stalled in Medicare's administrative appeals process, appealing the overpayment determination being pursued by Novitas Solutions, Inc.  Record Document 13-1, pp. 1–2.

Under Medicare's regulations, if a Medicare contractor determines an overpayment was made to a provider, that contractor may recoup the alleged overpayments from Medicare payments the provider would otherwise have received.  See 42 C.F.R. § 405.371(a)(3).  The provider may ask CMS or the contractor recouping payments not to begin recoupment, but the regulations prohibit that provider from appealing a recoupment decision to another administrative or judicial entity while the provider's claim on the merits proceeds through the Secretary's administrative appeals process.  42 C.F.R. § 405.375(c).

After an initial determination is made on the merits by a CMS contractor, the provider may appeal that determination, but must weather the Medicare appeals

process.  There are five levels of appeal for a provider challenging an initial determination by a CMS contractor:

1.  A redetermination by the MAC of the initial determination (42 C.F.R. §§ 405.940–405.958);

2.  A reconsideration by a Qualified Independent Contractor ("QIC") of the decision on redetermination (42 C.F.R. §§ 405.960–405.978);

3.  A hearing before an ALJ (42 C.F.R. §§ 405.1000–405.1054);

4.  Review by the Medicare Appeals Council (42 C.F.R. §§ 405.1100–1140); and,

5.  Judicial review in a United States District Court (42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405.1136; 42 C.F.R. § 405.1130).

Plaintiff has currently satisfied steps one and two, but now rests at the third level, the ALJ hearing.  Record Document 13-1, p. 10.  That request may not be honored for years.[2]  See Record Document 1-5 ("[Y]our request for a hearing to an Administrative Law Judge may be delayed for up to 28 months.").  While the wheels of the administrative appeals process churn, the appealing provider has little hope to stop the recoupment of alleged overpayments, as the decision to begin recoupment is not

---

[2] Medicare's administrative appeals process permits providers to jump over levels of the appeals process when the Secretary fails to grant a requesting providers the appeal sought within a defined period of time.  If an ALJ does not "conduct and conclude a hearing on a decision of a qualified independent contractor . . . and render a decision on such hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed," "the party requesting the hearing may request a review by the Departmental Appeals Board of the Department of Health and Human Services . . . ."  42 U.S.C. § 1395ff(d); 42 C.F.R. § 405.1104.  A similar escalation provision is available at the Medicare Appeals Council level.  42 U.S.C. § 1395ff(d)(3)(B); 42 C.F.R. § 405.1132; 42 C.F.R. § 405.1100(c)-(d).

reviewable. See 42 C.F.R. § 405.375(c).

In the instant case, Plaintiff seeks to stop recoupment and to receive an ALJ hearing by pursuing judicial review before administrative exhaustion. Record Document 1. Defendants state that this Court lacks subject matter jurisdiction at this stage of the dispute. Record Document 13-1.

## II.     Subject Matter Jurisdiction

Federal district courts are courts of limited subject matter jurisdiction "and cannot entertain cases unless authorized by the Constitution and legislation." Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996). "Accordingly, there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." Id. It is well settled that the United States is immune from suit unless its sovereign immunity is expressly waived. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Waivers of sovereign immunity are to be strictly construed and a "lack of waiver of sovereign immunity deprives federal courts of subject matter jurisdiction." Wagstaff v. U.S. Dep't of Educ., 509 F.3d 661, 664 (5th Cir. 2007) (internal quotation omitted). Because Plaintiff brings suit against an arm of the United States, Plaintiff must show that the sovereign immunity of the United States has been waived in this particular instance.

42 U.S.C. § 1395ff restrictively lifts the shield of sovereign immunity for Medicare claims, revealing a small window through which claims arising under Medicare may be

pursued through 42 U.S.C. § 405(g).[3]  Other routes to judicial review are closed to the

Medicare provider:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h); see Physician Hosps. of Am. v. Sebelius, 691 F.3d 649, 653 (5th

Cir. 2012).  As the Fifth Circuit stated, "The Medicare Act severely restricts the authority

of federal courts by requiring 'virtually all legal attacks' under the Act be brought

through the agency."  Physician Hosps., 691 F.3d at 653 (quoting Shalala v. Ill. Council

on Long Term Care, Inc., 529 U.S. 1, 13 (2000)).  The narrow road to judicial review

for Medicare claims is open only after a "final decision" of the Secretary has been

made.  42 U.S.C. § 405(g).  A "final decision" of the Secretary occurs only after (1) the

claim is presented to the Secretary and (2) all administrative remedies prescribed by

the Secretary are exhausted.  42 U.S.C. § 405(g); 42 U.S.C. § 1395ff; Mathews v.

Eldridge, 424 U.S. 319, 328–29 (1976).

  Here, Plaintiff's dispute over Medicare payments has been presented to the

Secretary.  Record Documents 13-1, p. 10; 10-1, p. 21.  However, the administrative

appeals process has not been exhausted.  Record Document 13-1, p. 10.  Nonetheless,

Plaintiff seeks judicial relief from the Defendants' recoupment decision, a timely

---

[3] Medicare's administrative appeals process is outlined above in Part I.

hearing, and a writ of mandamus requiring the Secretary to supply Plaintiff with an ALJ hearing.  Record Documents 1; 16.

Plaintiff presents the following grounds for this Court to find subject matter jurisdiction over Plaintiff's pleas for a writ of mandamus and injunctive relief:

(1)  28 U.S.C. § 1331 and Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000): Federal question jurisdiction exists to hear Plaintiff's claims because to channel these claims through the administrative appeals process would mean the claims would receive "no review at all;"

(2)  28 U.S.C. § 1651(a): The All Writs Act creates the power to grant injunctive relief to preserve a court's potential jurisdiction by maintaining the *status quo* between the parties while review in administrative channels is pending;

(3)  5 U.S.C. § 705: Subject matter jurisdiction under the APA exists to issue an injunction to "preserve status or rights pending conclusion of the review proceedings;"

(4)  28 U.S.C. § 1361: Subject matter jurisdiction exists to issue a writ of mandamus compelling an officer or employee of the United States to perform a non-discretionary duty owed to Plaintiff; and,

(5)  42 U.S.C. § 405(g) and Mathews v. Eldridge, 424 U.S. 319 (1976): Subject matter jurisdiction exists to demand a waiver of 42 U.S.C. § 405(g)'s administrative exhaustion requirement when a claim is collateral to a substantive claim for Medicare benefits and when irreparable injury is a

likely result of failing to waive exhaustion.

Record Documents 1, pp. 7–12; 10-1, pp. 20–25.[4]  Defendants counter that sovereign immunity has not yet been waived because a "final decision" has not been reached under 42 U.S.C. § 405(g), as each step of the Medicare administrative appeals process has not been completed.  Record Document 13.  Accordingly, Defendants ask the Court to dismiss Plaintiff's claims for lack of subject matter jurisdiction.  Id.

Plaintiff seems to assert that each of the grounds for subject matter jurisdiction Plaintiff proffered empower the Court to grant the injunctive relief Plaintiff seeks. Record Documents 1, p. 12; 10-1, pp. 20–25.  However, of the grounds discussed below, the first three are not applicable to Plaintiff's claims.  Additionally, while 28 U.S.C. § 1361 does enable this Court to issue a writ of mandamus if appropriate, it cannot be used to grant injunctive relief in this case.  On the other hand, under Mathews v. Eldridge, 42 U.S.C. § 405(g) permits this Court to exercise subject matter jurisdiction to hear Plaintiff's procedural due process claim and any claim arising out of an *ultra vires* action.

A.      28 U.S.C. § 1331 and *Shalala v. Illinois Council on Long Term Care, Inc.*

When bringing a claim through the prescribed administrative appeal process would amount to "no review at all" of the claim, the Supreme Court has stated that administrative appeals may be bypassed and 28 U.S.C. § 1331 invoked.  Illinois Council,

---

[4] Plaintiff seems to narrow the jurisdictional grounds proffered in its memorandum opposing Defendant's Motion To Dismiss.  Record Document 16. The bases for jurisdiction asserted therein are 28 U.S.C. § 1361, Mathews v. Eldridge, 424 U.S. 319 (1976), and 28 U.S.C. § 1331. Id. at 8–25.

529 U.S. at 19.  Plaintiff states that 28 U.S.C. § 1331 may provide subject matter

jurisdiction to issue the requested injunctive relief under the "no review at all"

exception to the administrative exhaustion requirement.  Record Documents 1, p. 8;

10-1, p. 23; 16, pp. 22–25.  If channeling Plaintiff's claims through the Medicare review

process "will amount to the 'practical equivalent of a total denial of judicial review,'"

Plaintiff may bring those claims under 28 U.S.C. § 1331.  Id. at 20 (quoting McNary v.

Haitian Refugee Ctr., 498 U.S. 479, 497 (1991)).[5]

The "no review at all" exception is narrow and does not simply permit a party to

avoid § 405(h) with a mere showing that postponement of judicial review would mean

inconvenience or cost to the plaintiff.  Id. at 22.  The question is whether the plaintiff

"is simply being required to seek review first through the agency or is being denied

altogether the opportunity for judicial review."  Cathedral Rock of N. College Hill, Inc. v.

Shalala, 223 F.3d 354, 360 (6th Cir. 2000).  Illinois Council's progeny clearly establishes

"that 'delays in the administrative process,' or hardships related to the delay, are not

sufficient to allow parties" to proceed directly to federal court.  Vertos Med., Inc., v.

Novitas Sols., Inc., 2012 WL 5943542, *5 (S.D. Tex. Nov. 27, 2012) (quoting Physician

Hosps., 691 F.3d at 654).  "The fact that the party would itself suffer great hardship

was not enough."  Id. at *6.  Instead, "no review at all" means "a legal impossibility

that any claimant would obtain judicial or administrative review, or hardship from

---

[5]  Put another way, "parties affected by Medicare administrative determinations may sue in
federal court under 28 U.S.C. § 1331, bypassing § 405 preclusion, only where requiring agency review
pursuant to § 405(h) would mean no review at all."  BP Care, Inc. v. Thompson, 398 F.3d 503, 508 (6th
Cir. 2005).

administrative channeling that was 'sufficiently widespread' to threaten the loss of any judicial review."[6]  Id.  "Sufficiently widespread" means that "no third party with an interest and a right to seek administrative review" exists.  Id.

In the instant case, Plaintiff has not made a plausible showing of a legal impossibility to judicial or administrative review or a "sufficiently widespread" hardship to justify a finding that "no review at all" will take place if the § 405(g) & (h) channeling requirement is not excepted.  Instead, Plaintiff states that the present recoupment practices of the Secretary will lead to "no review at all" because they "threaten to destroy [Plaintiff] before it can complete administrative appeals; it also threatens to destroy every other provider . . . while awaiting their day in court."  Record Document 16, p. 25.  Plaintiff describes a dire situation, one where a government contractor erroneously claims overpayment in an unreasonable amount, binds the provider in a seemingly endless administrative process, withholds 95% of the provider's income, and forces the provider out of business before it can receive its day in court.  Record Document 1, pp. 1–5.  However, the decision by Congress to allow for "the channeling requirement 'comes at a price.'"  Physician Hosps., 691 F.3d at 659.  The risk of Plaintiff

---

[6]  A "legal impossibility" to judicial or administrative review, and thus the "no review at all" exception, is not found "simply because the plaintiff's claims were not cognizable in the administrative appeals process."  See Griego v. Leavitt, 2008 WL 2200052, *8 (N.D. Tex. May 16, 2008) (citing Illinois Council, 529 U.S. at 22–24).  "The fact that the agency might not provide a hearing for that particular contention . . . is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency."  Illinois Council, 529 U.S. at 23 (internal citations and emphasis omitted).  The Court will consider the contention when it reviews the action "[a]fter the action has been so channeled."  Id.  "A plaintiff whose legal claims are outside the scope of the administrative appeals process must wait until the judicial forum to prosecute the claims, and this delay does not permit him to circumvent § 405(g)'s channeling requirement."  Griego, 2008 WL 2200052, at *8.

"closing its doors" does not itself satisfy the "no review at all" exception to § 405(h) preclusion.[7]  Accordingly, the "no review at all" exception does not provide subject matter jurisdiction to this Court to issue the injunctive relief Plaintiff seeks.

      B.     <u>28 U.S.C. § 1651(a)</u>

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.  The All Writs Act does not grant subject matter jurisdiction to federal courts, but rather empowers "them only to issue writs in aid of jurisdiction previously acquired on some other independent ground."  <u>Brittingham v. United States Comm'r of Internal Revenue</u>, 451 F.2d 315, 317 (5th Cir. 1971).  The All Writs Act confers only "a limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels."  <u>Arrow Trans. Co. v. S. Ry. Co.</u>, 372 U.S. 658, 671 n.22 (1963).  <u>See also</u> <u>V.N.A. of Greater Tift Cnty, Inc. v. Heckler</u>, 711 F.2d 1020, 1027–28 (11th Cir. 1983) (confirming

---

       [7] In <u>GOS Operator, LLC v. Sebelius</u>, the plaintiff brought similar claims for injunctive relief to those of Plaintiff, namely procedural due process and *ultra vires*, and contended that § 405(h) should not impede the lawsuit because deferring judicial review until administrative exhaustion would be tantamount to "no review at all" as plaintiff would "cease operations and go out of business."  843 F. Supp. 2d 1218, 1221–24 (S.D. Ala. 2012).  The court concluded, however, that there were no impediments to the plaintiff presenting these claims first to the administrative review process and then later to the court after exhaustion.  <u>Id.</u> at 1227–28.  The court made clear that plaintiff was not required to present those claims in the administrative appeals process to preserve them for judicial review. <u>Id.</u> at 1227. Rather, the court stated that the plaintiff's "no review at all" argument was misplaced because the plaintiff could have presented those constitutional/statutory claims in the administrative appeal, "obtained waiver of intermediate procedural steps, and proceeded to bring these claims in federal court in a prompt and timely fashion." <u>Id.</u>  Using the same reasoning, Plaintiff's claims do not qualify for the "no review at all" exception simply because Plaintiff claims it will cease operations if its claims are not judicially reviewed.

the limited usefulness of the All Writs Act to grant federal courts the ability to issue injunctions in the Medicare context).

The Supreme Court in Sampson v. Murray stated that while district courts are "not totally without authority to grant interim injunctive relief" in a status quo action, a district court would commit error in applying the traditional preliminary injunction standards to such a case. 415 U.S. 61, 63 (1974).  This guidance has been used to create the Murray factors:

> (1) virtual certainty of irreparable injury, (2) a similar certainty of success on the merits, for example, outrageous or entirely unauthorized (*ultra vires*, so to speak) agency action, (3) minimal harm to the agency, in the sense of disruption of its processes, and (4) the public interest clearly favoring the assumption of jurisdiction.

V.N.A., 711 F.2d at 1034.  "All of these requirements must be satisfied."  Id.

The Fifth Circuit has adopted these heightened standards in the All Writs Act context.  Faith Home Health Servs., Inc. v. Shalala, 166 F.3d 341 (5th Cir. 1998).  In Faith Home, the plaintiffs argued, similarly to Plaintiff, that "(1) the [defendants'] actions have rendered it unable to pay its bills, pay and retain its employees, and provide health care services to patients, (2) there is a substantial likelihood that [the plaintiff] will ultimately succeed on the merit[s] because of [the defendants'] wrongful conduct, and (3) the issuance of an injunction would not disserve the public interest."  Id. (internal quotations omitted).  However, the Fifth Circuit held that the plaintiff failed to demonstrate a virtual certainty of success on the merits and that the harm the

plaintiff alleged was "not sufficient to warrant a pre-jurisdictional injunction."  Id.

In Landmark Medical Center v. Bowen, the plaintiff attempted to show a "virtual certainty of irreparable injury" by claiming that 50% of its revenue would dry up upon termination of Medicare status, that it would go out of business, and that economic hardship would result for its employees due to a loss of employment.  700 F. Supp. 350, 351 (W.D. Tex. 1988).  The court concluded that "there is no reason to think that [the plaintiff] finds itself in straights [sic] which 'so depart from the normal situation as to justify fundamental deviation from the statutory scheme.'"  Id. (quoting V.N.A., 711 F.2d at 1034 (internal quotations omitted)).  The court noted that an injunction would "'seriously disrupt the congressionally mandated process,'" injuring the defendants.  Id. at 351–52 (quoting V.N.A., 711 F.3d at 1035). Virtual certainty of success was also not found because "the wrong complained of cannot be classified as 'outrageous or entirely unauthorized' agency action."  Id. at 351 (quoting V.N.A., 711 F.3d at 1034).  While noting that the public's interest rested in having the plaintiff's business remain open, the court concluded that "satisfaction of one of the four Murray factors is insufficient to support the issuance of a status quo injunction under the All Writs Act."  Id. at 352.

In the present case, Plaintiff may demonstrate irreparable injury, but does not do so to a sufficient degree in light of all the Murray factors to justify a departure from the statutory preclusion of preliminary injunctive relief in this administrative process. See V.N.A., 711 F.2d at 1034 (quoting Murray, 415 U.S. at 84).  Plaintiff has not demonstrated any unauthorized or outrageous behavior by an agency that would lead to a virtual certainty of success on the merits.  See id.  Plaintiff's allegations are not

enough to justify the use of the All Writs Act to issue the injunctive relief Plaintiff

requests.

      C.     <u>5 U.S.C. § 705</u>

      Plaintiff states that this Court has subject matter jurisdiction to issue a *status*

*quo* injunction under 5 U.S.C. § 705, a provision of the APA.  Record Document 10-1, p.

25. Section 705 provides:

> When an agency finds that justice so requires, it may postpone the
> effective date of action taken by it, pending judicial review. On such
> conditions as may be required and to the extent necessary to prevent
> irreparable injury, the reviewing court, including the court to which a case
> may be taken on appeal from or on application for certiorari or other writ
> to a reviewing court, may issue all necessary and appropriate process to
> postpone the effective date of an agency action or to preserve status or
> rights pending conclusion of the review proceedings.

Plaintiff claims that this Court may preserve the *status quo* since this Court is potentially

a "reviewing court" to which Plaintiff may appeal after exhaustion of the administrative

process.  Record Documents 1, pp. 41–42; 10-1, p. 25.

      Section 705 of the APA is not an independent grant of subject matter

jurisdiction.  <u>See</u> <u>Your Home Visiting Nurse Servs. v. Shalala</u>, 525 U.S. 449, 457–58

(1999).  The Supreme Court has stated that the APA does not provide a mechanism to

override the jurisdictional requirements of § 405(h).  <u>See</u> <u>id.</u> at 456–58; <u>Heckler v.

Ringer</u>, 466 U.S. 602, 622–23 (1984).  Additionally, the Fifth Circuit has concluded that

§ 705 of the APA does not give district courts subject matter jurisdiction to issue

injunctions in Medicare suits.  <u>Faith Home</u>, 166 F.3d 341.  Section 705 of the APA does

not serve as a grant of the subject matter jurisdiction necessary for this Court to issue

the injunctive relief sought by Plaintiff.  Thus, the claim Plaintiff describes as a "preservation of rights" under § 705 of the APA must be dismissed.

D.      28 U.S.C. § 1361

Plaintiff attempts to use 28 U.S.C. § 1361 to establish the subject matter jurisdiction necessary for this Court to issue both a writ of mandamus and injunctive relief.  Record Document 1, 12.  Section 1361 does grant this Court the subject matter jurisdiction necessary to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  Additionally, 42 U.S.C. § 405(h) does not preclude application of § 1361 in the Medicare context when the issue is procedural and would not otherwise be reviewed.  Wolcott v. Sebelius, 635 F.3d 757, 764 (5th Cir. 2011).  Accordingly, the Court has jurisdiction to issue a writ of mandamus if Plaintiff can make a sufficient showing that Defendants owe Plaintiff a nondiscretionary duty.[8]

In addition to asking for a writ of mandamus, Plaintiff also asks for an injunction to prevent recoupment while the administrative proceedings are unfolding.  Record Documents 1, pp. 43–44; 16, p. 26.  However, Plaintiff's citation to § 1361 as providing subject matter jurisdiction for such a claim is misplaced.  Record Document 1, p. 12. Section 1361's grant of subject matter jurisdiction to issue writs of mandamus does not grant this Court subject matter jurisdiction to provide injunctive relief.  Wolcott, 635

---

[8] The relief Plaintiff seeks through a writ of mandamus has not been made clear.  See comment, supra note 2.  However, Plaintiff's seeming ambivalence as to the mandamus relief it seeks is not material at this stage of the analysis.

F.3d at 766.  "An injunction 'is a remedy to restrain the doing of injurious acts' or to require 'the undoing of injurious acts and the restoration of the status quo,' whereas 'mandamus commands the performance of a particular duty that rests on the defendant or respondent, by operation or law or because of official status.'" Wolcott, 635 F.3d at 766 (quoting 42 AM. JUR. 2D *Injunctions* § 7).  Accordingly, § 1361 does not provide the subject matter jurisdiction necessary to hear Plaintiff's claims for injunctive relief.

      E.      42 U.S.C. § 405(g) and *Mathews v. Eldridge*

Plaintiff looks to 42 U.S.C. § 405(g), as interpreted by the Supreme Court in Mathews v. Eldridge, to provide the subject matter jurisdiction necessary for Plaintiff to achieve the injunctive relief sought.  In the context of 42 U.S.C. § 405(g) and Mathews v. Eldridge, determining the legal basis for Plaintiff's pursuit of injunctive relief is crucial to answering the question of whether subject matter jurisdiction exists to issue the injunction sought.  Based upon procedural and substantive due process, Plaintiff has asked the Court to enjoin recoupment of the alleged overpayments while the administrative proceedings are ongoing.[9]  Record Documents 1, pp. 39–40; 16, p. 26.  In what Plaintiff titles an *"ultra vires* action," Plaintiff asks this Court to grant an injunction requiring the Secretary to grant Plaintiff an ALJ hearing within 90 days of October 14, 2015.  Record Document 1, p. 41.  These three proposed grounds for

---

[9] A decision to begin recoupment is not reviewable either at any level of the administrative appeals process or judicially.  42 U.S.C. § 1395ff(b); 42 C.F.R. § 405.375(c).  Accordingly, once recoupment has begun, a provider can expect the recoupment's end only upon a favorable resolution of the appeals process or when the alleged overpayment is fully recouped.  Nonetheless, Plaintiff asks this Court to enjoin recoupment and states that the Supreme Court's decision in Mathews v. Eldridge, 424 U.S. 319 (1976), defines why subject matter jurisdiction is available to this Court to entertain Plaintiff's due process claims.  Record Document 16, pp. 15–22.

injunctive relief will be evaluated in the light of 42 U.S.C. § 405(g) and Mathews to determine whether subject matter jurisdiction exists to grant the injunctive relief sought.

For suits involving Medicare, the door to judicial review is opened only after a "final decision" of the Secretary.  42 U.S.C. § 405(g).  A "final decision" on a claim is possible after (1) a claim for benefits is presented to the Secretary and (2) all prescribed administrative processes have been exhausted.  Mathews, 424 U.S. at 328.  However, the second requirement, exhaustion, can be waived by a court "when a plaintiff asserts a collateral challenge that can not be remedied after the exhaustion of administrative review."  Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir. 1999) (citing Mathews, 424 U.S. at 330–32).

In Affiliated Professional, the Fifth Circuit addressed the Mathews exception but did not clearly articulate a test to be employed when determining whether a Mathews waiver is appropriate.  164 F.3d at 285–86.  In its *per curiam* opinion, the court first examined whether the plaintiff's substantive due process claim was collateral to the administrative review process.  Id.  The court found that it was not.  Id.  The court then asked whether "a sufficient threat of irreparable harm [existed] so as to justify a waiver of the administrative exhaustion requirement."  Id. at 286.  The court concluded that one did not.  Id.

While the Fifth Circuit did not pronounce that either a collateral challenge or irreparable harm may justify a Mathews wavier, some district courts have concluded that an "either/or" test is appropriate given that Affiliated Professional's irreparable

Page 20 of  30

harm inquiry would not be necessary if both a collateral challenge and irreparable harm were required.  In <u>Oak Park Health Ctr., LLC v. Johnson</u>, the district court interpreted the Fifth Circuit's decision in <u>Affiliated Professional</u> to mean that either the existence of a "collateral challenge" or a colorable claim of irreparable harm is enough to warrant a waiver of § 405(g)'s exhaustion requirement.  2009 WL 331563, *2 (W.D. La. Feb. 10, 2009).  In <u>Norah v. Leavitt</u>, another district court stated that "the Fifth Circuit suggested [in <u>Affiliated Professional</u>] that a finding of irreparable harm alone could justify judicial waiver of exhaustion."  2005 WL 887282, *4 (E.D. La. Apr. 12, 2005).[10]

This Court respectfully disagrees with the above interpretations of <u>Affiliated Professional</u>.  <u>Affiliated Professional</u> did not articulate an "either/or" test directly and should not be understood to have done so implicitly.  Rather, the Fifth Circuit in <u>Affiliated Professional</u> evaluated the merits of both prongs of the <u>Mathews</u> test, concluding that neither were satisfied.  164 F.3d at 285–86.  To adopt an "either/or" test would be inconsistent with the Supreme Court's decision in <u>Mathews</u>.

_____

[10] In contrast to <u>Oak Park</u> and <u>Norah</u>, the district court in <u>Feldman v. Department of Health and Human Services</u> cited to <u>Affiliated Professional</u> repeatedly but failed to address the ambiguity of whether the Fifth Circuit's decision establishes an "either/or" test, instead concluding that a three-part test should be used to determine if judicial waiver was appropriate.  2012 WL 3293407, *4 (M.D. La. Aug. 10, 2012).  The test used in <u>Feldman</u> requires the claim at issue to be (1) collateral to the substantive claim of entitlement, (2) colorable in its showing that denial of relief will cause irreparable harm, and (3) one whose resolution would not serve the purposes of exhaustion.  <u>Id.</u>  The test adopted by <u>Feldman</u> is also used in other circuits.  <u>See</u> <u>Kaiser v. Blue Cross of California</u>, 347 F.3d 1107, 1115 (9th Cir. 2003) (citing <u>Johnson v. Shalala</u>, 2 F.3d 918, 921 (9th Cir. 1993)); <u>see also</u> <u>Clarinda Home Health v. Shalala</u>, 100 F.3d 526, 530–31 (8th Cir. 1996) (citing <u>Anderson v. Sullivan</u>, 959 F.2d 690, 693 (8th Cir. 1992)).

The Seventh Circuit holds that "[w]aiver of the exhaustion requirement is appropriate only where (1) the plaintiffs' suit involves a collateral attack rather than one on the merits, and (2) the plaintiffs' interest in prompt judicial review is so compelling that deference to the agency's determination is inappropriate."  <u>Johnson v. Sullivan</u>, 922 F.2d 346, 352–53 (7th Cir. 1991).

Mathews is best understood to require both a collateral claim and a showing of irreparable harm before a waiver may issue.  See id. at 330–32.  The first prong of the Mathews analysis is seminally jurisdictional, serving to determine whether resolving the particular claim at issue would interfere with the ongoing administrative appeals process.  The second prong is practical, serving to determine the necessity of the Court side-stepping the Congressionally-imposed exhaustion requirement of 42 U.S.C. § 405(g).  Requiring both prongs to be met before a judicial waiver of exhaustion is made is supported by the weight of the jurisprudence on the issue.  See Bowen v. City of New York, 476 U.S. 467, 482–84 (1986); Johnson, 922 F.2d at 352–53; Kaiser, 347 F.3d at 1115; Clarinda Home Health v. Shalala, 100 F.3d 526, 530–31 (8th Cir. 1996). The first prong of this two-part test determines if each of Plaintiff's claims is collateral to the substantive claim for benefits disputed in the ongoing administrative appeals process.  The second prong evaluates Plaintiff's showing of irreparable harm to determine if waiver of administrative exhaustion and bifurcation of the dispute into different forums is justified.  To allow only the first prong to warrant wavier of exhaustion would open the doors to litigants to flood the court with procedural claims of trivial consequence.  To conclude that only the second prong is required to warrant waiver of exhaustion renders the channeling requirement of the administrative appeals process purposeless.  Both prongs are necessary to justify Mathews' path around the exhaustion requirement.

       i.      Procedural Due Process

Plaintiff maintains that procedural due process under the Fifth Amendment of the

United States Constitution requires the Secretary to afford it an oral, evidentiary hearing before an ALJ prior to the Secretary recouping disputed overpayments.[11] Record Documents 1, p. 39; 16, p. 26.  In Mathews, the Supreme Court held that the plaintiff's procedural due process challenge was "entirely collateral to his substantive claim of entitlement."  424 U.S. at 330. The Court found that the claim dealt with an analysis of jurisprudence surrounding the Due Process Clause of the Fifth Amendment, and was thus collateral to the substantive claim to Medicare benefits which questioned the Secretary's decision to end benefits.  Id.

The Fifth Circuit in Affiliated Professional held that the plaintiff's substantive due process claims were not collateral to the claims disputed in the administrative process because "a court would necessarily have to immerse itself in [Medicare] regulations and make a factual determination as to whether [the plaintiff] was actually in compliance." 164 F.3d at 285–86.  In the instant case, Plaintiff's procedural due process claim is distinguishable from the relevant claim in Affiliated Professional because that plaintiff's claim was founded in substantive due process, requiring a review of the Secretary's factual determinations.  Id.  Accordingly, the plaintiff's constitutional claim in Affiliated Professional was "'inextricably intertwined' with a substantive claim of administrative entitlement." Id. (quoting Heckler v. Ringer, 466 U.S. 602, 611 (1984)).

In Feldman, however, the plaintiffs claimed "that allowing Defendants to recoup earned Medicare reimbursements without a hearing [was] a violation of their due

---

[11]  Defendants do not dispute that the money to be recouped is otherwise owed to Plaintiff. Neither have allegations of fraud been made.

process rights." 2012 WL 3293407, *5. But, the district court concluded that such a claim was "a direct challenge to the Secretary's substantive and initial determination that overpayments were made to Plaintiffs." Id. This Court disagrees with Feldman's conclusion.

The question presented in the instant case, whether a prerecoupment oral, evidentiary hearing is required under the Due Process Clause of the Fifth Amendment before the Secretary recoups allegedly overpaid benefits, is similar to the procedural due process claim asserted in Mathews. 424 U.S. at 330–31. A ruling on the merits of Plaintiff's procedural due process claim will involve this Court in no way with a determination of whether Plaintiff was overpaid by Medicare, to what degree any overpayment was made, or the suitability of the statistical extrapolation used to assess Plaintiff's alleged overpayment. See Oak Park, 2009 WL 331563, *2; GOS Operator, LLC v. Sebelius, 843 F. Supp. 2d 1218, 1232 (S.D. Ala. 2012); Ridgeview Manor of the Midlands, L.P. v. Leavitt, 2007 WL 1110915, *4–5 (D. S.C. Apr. 9, 2007). Plaintiff's procedural due process claim is entirely collateral to Plaintiff's substantive claim to Medicare benefits and thus is collateral for purposes of a Mathews waiver.

The next step of the Mathews analysis is to determine whether Plaintiff "has raised at least a colorable claim" that irreparable harm will result if the collateral claim is not heard. 424 U.S. at 331. Plaintiff has raised at least a colorable claim that premature recoupment "would damage [Plaintiff] in a way not recompensable through retroactive payments." Mathews, 424 U.S. at 331. Plaintiff states that recoupment by Defendants will result in the deprivation of 95% of Plaintiff's total revenues. Record

Document 1, pp. 4, 32.  "[G]oing out of business can be sufficient evidence of irreparable injury."  MaxMed Healthcare, Inc. v. Burwell, 2015 WL 1310567, *3 (W.D. Tex Mar. 23, 2015).  Additionally, Plaintiff has presented some evidence that if Plaintiff cannot serve its patients, those patients will not be able to receive care from other providers.  Record Documents 1, pp. 5–8; 26-1; 26-2.  Plaintiff claims that those patients left without Plaintiff's care will be placed in physical danger and that Plaintiff will suffer a loss of good will and business reputation as well.  Record Document 1, p. 36.  The Court is also aware of the harm that Plaintiff's closure may inflict upon Plaintiff's employees.  See Record Document 1, pp. 5–6.  Defendants state that if Plaintiff is successful in the prescribed administrative appeals process, then the recouped Medicare payments will be returned to Plaintiff with interest.  Record Document 13-1, p. 10.  However, the potential harms Plaintiff describes are not compensable through such a retroactive payment.  Accordingly, a colorable claim that irreparable harm will result has been made.  Thus, Plaintiff's procedural due process claim qualifies for a waiver of § 405(g)'s exhaustion requirement as it is collateral to the underlying substantive claim to Medicare benefits disputed in Medicare's appeals process and a colorable claim of irreparable harm has been shown.

> ii.   Substantive Due Process

Plaintiff's substantive due process claim is not collateral to the underlying substantive dispute ongoing in Medicare's appeals process.  See Affiliated Prof'l, 164 F.3d at 285–86.  The substantive due process claim Plaintiff defines is that "[i]t would be a clear abuse of discretion, and arbitrary and capricious action, for Defendants to

withhold [Plaintiff's] Medicare payments pending a hearing before an ALJ under the circumstances of this case." Record Document 1, p. 40. This claim is not "collateral" because it asks this Court to involve itself in the merits of the Secretary's decision to begin recoupment. "Such relief is unquestionably administrative in nature." Affiliated Prof'l, 164 F.3d at 286. Accordingly, a Mathews waiver is not appropriate for Plaintiff's substantive due process claim.

    iii. *Ultra Vires*

   Plaintiff asks the Court to enjoin Defendants from engaging in what Plaintiff styles *ultra vires* actions, specifically, from failing to provide Plaintiff with an ALJ hearing and decision within 90 days from October 14, 2015. Record Document 1, p. 41. Though neither Plaintiff nor Defendants directly dispute whether Plaintiff's *ultra vires* action qualifies as a collateral claim for purposes of Mathews, this Court holds that an ultra vires action may give rise to a collateral claim. However, in this case, Plaintiff has presented the Court with insufficient facts upon which to grant relief.

   In the agency context, an *ultra vires* act is one where the agency has exceeded its statutory or constitutional power to act. See City of Arlington, Tex v. F.C.C., __U.S. __, 133 S. Ct. 1863, 1864–65 (2013). In Lake C'nty Rehab. Ctr., Inc. v. Shalala, the district court concluded that a claim was sufficiently collateral under Mathews because "the issue before the Court solely addresses a question of law regarding the scope of the Secretary's power." 854 F. Supp. 1329, 1336 (N.D. Ind. 1994). See also N. Health Facilities, Inc. v. United States, 39 F. Supp. 2d 563, 570 (D. Md. 1998) ("Plaintiff's claims do not require the Court to address the substance of the Secretary's decision.

Rather, Plaintiff's claims are a collateral attack addressing the scope of the Secretary's power under the Medicare Act."). Similarly to Plaintiff's procedural due process claim, its *ultra vires* claim is distinguishable from the non-collateral substantive due process claim brought in <u>Affiliated Professional</u> because the *ultra vires* claim does not cause the court to "immerse itself in [Medicare] regulations and make a factual determination as to whether [the plaintiff] was actually in compliance." 164 F.3d at 285–86. The determination of whether Defendants have performed some act which exceeds their power is theoretically a purely legal one. It does not inextricably intertwine the Court with any determination made in the ongoing administrative appeals process. Plaintiff's *ultra vires* action is thus collateral for purposes of a <u>Mathews</u> waiver.

The facts discussed in Part II.E.i are equally pertinent to the determination of whether Plaintiff has made a colorable claim that irreparable harm will result if administrative exhaustion is not waived under <u>Mathews</u> for its collateral *ultra vires* action. Plaintiff states that if it is not granted a timely administrative hearing and recoupment continues in the interim, it will lose the same amount of revenue, will go out of business, could not care for its rural customer base, and must terminate its employees. Record Documents 1, pp. 4, 5–8, 32, 36; 26-1; 26-2. These are damages not recompensable through retroactive payment. A colorable claim that irreparable harm will result has been made in the context of Plaintiff's *ultra vires* action. Accordingly, a <u>Mathews</u> waiver of § 405(g)'s exhaustion requirement is appropriate for Plaintiff's *ultra vires* action because it is collateral to the underlying substantive claim to Medicare benefits disputed in Medicare's appeals process and a colorable claim of

irreparable harm has been shown.

Though subject matter jurisdiction exists to weigh its merits, Plaintiff's *ultra vires* action is no more than bare bones.  However, a *sua sponte* dismissal under Rule 12(b)(6) is not appropriate because notice of a pending dismissal has not been provided to Plaintiff.  See Carroll v. Fort James Corp., 470 F.3d 1171, 1176–77 (5th Cir. 2006).  Plaintiff is advised that the Court will dismiss its *ultra vires* action *sua sponte* if Plaintiff fails to state a claim upon which relief can be granted within the delay specified below.

### III.   Failure to State a Claim Upon Which Relief Can Be Granted

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  However, courts "are not bound to accept as true a legal conclusion couched as factual allegation." Twombly, 550 U.S. at 555.

In the alternative to the Court dismissing Plaintiff's claim for a writ of mandamus for lack of subject matter jurisdiction, Defendants ask the Court to dismiss that claim under Federal Rule of Civil Procedure 12(b)(6).  Record Document 13-1, pp. 26–27. Defendants argued that "[b]ecause Plaintiff has not pleaded a mandatory duty that would give rise to a mandamus relief, it has failed to state a claim on which relief can be granted." Id.   Proving that a writ of mandamus should issue is a high burden, and

the writ should be utilized in only "extraordinary circumstances." Kerr v. U.S. Dist. Court, 426 U.S. 394, 403 (1976).  Mandamus is appropriate when these three elements are satisfied: "(1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3) no other adequate remedy exists."   Wolcott, 635 F.3d at 768 (citing Green v. Heckler, 742 F.2d 237, 241 (5th Cir. 1984)).  Plaintiff must establish each element to justify the issuance of a writ of mandamus.  Id.  A writ of mandamus should issue solely when the federal actor's legal duty to perform as ordered is "free of doubt." Winningham v. U.S. Dep't Hous. & Urban Dev., 512 F.2d 617, 620 (5th Cir. 1975).

Between its various filings with this Court, Plaintiff has vacillated over the alleged nondiscretionary duty it claims Defendants owe.  In its Complaint, Plaintiff asks this Court to issue a writ of mandamus ordering the Secretary to grant Plaintiff a hearing before an ALJ within 90 days.  Record Document 1, pp. 37–38.  Later, Plaintiff appears to forego that claim and instead asserts that Defendants are required to grant Plaintiff an oral, evidentiary hearing before beginning recoupment.  Record Document 16, p. 26. In either case, Plaintiff has failed to identify a nondiscretionary duty Defendants owe to Plaintiff that is "free of doubt."  Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.  Plaintiff's claim for a writ of mandamus must be dismissed.

## IV.   Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss [Record Documents 13 and 14] is

(1)    **GRANTED IN PART** to **DISMISS WITHOUT PREJUDICE** Plaintiff's

substantive due process claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction;

(2) **GRANTED IN PART** to **DISMISS WITH PREJUDICE** Plaintiff's "preservation of rights" claim under Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction under 5 U.S.C. § 705 to issue the injunctions Plaintiff seeks;

(3) **GRANTED IN PART** to **DISMISS WITHOUT PREJUDICE** Plaintiff's writ of mandamus claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted; and,

(4) **DENIED IN PART** because the Court has subject matter jurisdiction over Plaintiff's procedural due process claim and *ultra vires* action.

(5) Plaintiff's *ultra vires* action, as currently set forth in its Complaint, is not one upon which relief can be granted.  Plaintiff is **ORDERED** to submit an amended complaint elucidating an *ultra vires* action by **Tuesday, February** 9, **2016** if *sua sponte* dismissal of Plaintiff's *ultra vires* action is to be avoided.

The Court will contact all parties to determine availability for a status conference to discuss the remaining issues in this matter.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 12th day of January, 2016.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE